**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **EVAN ENGEL, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:26-CV-00216-O** |
| | § | |
| **US VISIONMED PARTNERS, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

# OPINION & ORDER

Before the Court are Defendants Kian Capital Partners LLC ("Kian") and RF Investment Partners LLC's ("RF") Motion to Dismiss, Brief, and Appendix in Support (ECF Nos. 29–31); Plaintiffs' Response (ECF No. 56); and Kian and RF's Reply (ECF No. 57); Defendant US VisionMed Partners' ("VisionMed") Motion to Dismiss and Brief in Support (ECF Nos. 37–38); Plaintiffs' Response (ECF No. 54); and VisionMed's Reply (ECF No. 58): Lakewood Healthcare Capital's ("Lakewood") Motion to Dismiss and Brief in Support (ECF Nos. 49–50); Plaintiffs' Response (ECF No. 55); and Lakewood's Reply (ECF No. 59). Having considered the motions, briefing, and applicable law the Court **GRANTS** in part and **DENIES** in part the motions to dismiss.

## I. BACKGROUND[1]

This case arises from the alleged misuse of Plaintiffs' trade secret and confidential information. On or around March 23, 2021, Plaintiffs Evan Engel, Josh Kanter, and Ilan Manoim

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Complaint, documents attached to the Complaint, and matters on which the Court may take judicial notice. *See* Pls.' Compl., ECF No. 1; *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). At this stage, these facts are taken as true and viewed in the light most favorable to the plaintiffs. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

(the "Amplify Founders") (together with Kelly Brooks and Dr. Heather McBryar, the "Individual Plaintiffs") formed Plaintiff Amplify Eyecare, Inc. ("Amplify") with the goal of purchasing optometry practices throughout the United States. Amplify was formed as the United States operating subsidiary of Amplify Eyecare Ltd. ("AEC"), an Australian corporation. Amplify allegedly identified 37 existing optometry practices as potential acquisition targets, purchased four of them in 2021 and 2022, and entered into letters of intent to purchase six more practices. Ultimately, Amplify did not have the capital needed to purchase those six practices.

To assist in raising capital, Amplify engaged Defendant Logan Growth Advisors, LLC ("Logan"). Amplify authorized Logan to use its business information to create pitch materials, market the opportunity to invest in Amplify, and ask interested parties to sign non-disclosure agreements. By January 23, 2023, Amplify had multiple offers from third parties to act as equity sponsors and/or otherwise contribute capital. The Complaint identifies non-disclosure agreements signed by Defendant Tandem Ventures ("Tandem")—the alleged predecessor in interest to Defendant Lakewood Healthcare Capital, LLC ("Lakewood")—and Defendant RF Investment Partners, LLC ("RF").

Plaintiffs' allegations indicate that at some time around February 2023, Amplify shifted its focus from Logan to deal with Lakewood. Plaintiffs assert that Lakewood convinced Plaintiffs to revise their letters of intent ("LOI") with the targeted optometry practices so that Lakewood, rather than Amplify, would be the party to the LOIs. On April 17, 2023, Lakewood sent Amplify a non-binding "indication of interest" memorializing its stated intention of purchasing 50.1% of Amplify's preferred equity interests, contingent on certain funding and other conditions.

Plaintiffs allege that in May 2023, in furtherance of its goal of partnering with Lakewood, Amplify voluntarily provided Lakewood access to "all" of its "Confidential Information."[2] On June 4, 2023, Lakewood circulated a non-binding LOI (the "June 4 LOI") for the acquisition of Amplify, which at the time anticipated an equity purchase. In July 2023, Lakewood requested—and Amplify provided—a presentation about Amplify's platform that could be used to obtain third-party financing for the business. Then, in September 2023, Lakewood lowered its valuation of Amplify and provided an updated LOI ("September LOI") that outlined an asset acquisition rather than an equity purchase, in anticipation of forming a new venture ("NewCo") with the Amplify Founders.

Shortly thereafter, Lakewood, with the help of investment bank SPP Capital Partners, LLC ("SPP"), created and circulated an Offering Memorandum to potential investors for the proposed NewCo. Between mid-October 2023 and March of 2024, representatives of Lakewood and Amplify met with potential investors, RF and Kian, from whom they secured a financial commitment. Lakewood continued to negotiate funding for NewCo as Amplify's financial condition declined. By April 2024, that financial condition became dire. In February and March 2024, Lakewood, Kian, and RF informed Amplify that (1) the investment committee did not feel comfortable having NewCo acquire Amplify's optometry practices, and (2) that they declined to approve the employment of the Amplify Founders or any other individual Plaintiff by NewCo.

As a result, the NewCo transaction—that is, the formation and capitalization of VisionMed—moved forward without involvement by any of the Plaintiffs. This action followed. In their Complaint, Plaintiffs allege that VisionMed acquired certain optometry practices that

---

[2] The Complaint defines "Confidential Information" as: "The Amplify EyeCare Platform, including, without limitation, its analytic research, market trend analysis, proprietary metrics for acquisitions, methods, techniques, processes, procedures, and its identified acquisition targets." *See* Compl. ¶ 45, ECF No. 1.

Amplify had identified as potential acquisition targets, offers the same services as Amplify, and is based on the Amplify Eye Care Platform.

The Complaint alleges a total of eleven causes of action from various Plaintiff against various Defendants: (1) trade secret misappropriation against all Defendants by AEC; (2) breach of contract against Tandem and Lakewood by Amplify; (3) breach of contract against RF by Amplify; (4) fraud against Lakewood by Amplify; (5) fraud against Lakewood by the Amplify Founders and Dr. McBryar; (6) tortious interference with Amplify's prospective business relationships against Lakewood, RF, and Kian by Amplify; (7) unfair competition against all Defendants by Amplify: (8) civil conspiracy against Lakewood, RF, and Kian by all Plaintiffs; (9) unjust enrichment against VisionMed by AEC, in the alternative; (10) unjust enrichment against Lakewood, RF, Kian, and VisionMed by rhe Individual Plaintiffs; (11) quantum meruit against Lakewood, RF, Kian, and VisionMed by the Individual Plaintiffs. Lakewood, RF/Kian, and VisionMed all move to dismiss Plaintiffs' claims against them. The motions to dismiss have been briefed and are not ripe for the Court's review.

## II. LEGAL STANDARD

A "complaint will survive a Rule 12(b)(6) motion to dismiss if, accepting its factual allegations as true, the complaint plausibly states a claim for relief." *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court, in turn, must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). If there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an

entitlement to relief. *Id*. In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the contents of the pleadings, with the exception of documents attached to the motion to dismiss that are referenced in the complaint and central to the plaintiffs' claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

Where, as here, the complaint involves an allegation of fraud, Federal Rule of Civil Procedure 9(b) imposes a higher standard on the complainant, requiring that he plead with "particularity the circumstances constituting fraud." A plaintiff asserting a fraud claim must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

## III. ANALYSIS

The Court considers RF/Kian, Lakewood, and VisionMed's motions to dismiss each in their own turn.

### A. RF/Kian's Motion to Dismiss

#### 1. Trade Secret Misappropriation

AEC brings claims for trade secret misappropriation against RF/Kian pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), and the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A.002(3-a) ("TUTSA"). To state a claim under either statute, a plaintiff must allege facts plausibly showing that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (emphasis in original)

(quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)). The term "misappropriation" has an identical definition under the DTSA and TUTSA. Generally, it means (1) the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the disclosure or use of a trade secret of another without express or implied consent by a person who acquired it through improper means or under circumstances giving rise to a duty to maintain its secrecy. TEX. CIV. PRAC. & REM. CODE § 134A.002(3); 18 U.S.C. § 1839(5).

Plaintiffs have adequately pleaded the existence of a trade secret. At the pleading stage, Plaintiffs do "not need to provide a specific description of the trade secret[s]" at issue in the case. *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 561 (N.D. Tex. 2024) (citing *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 493 (5th Cir. 2016)). Plaintiffs merely need to show "'that at least some aspects' of the information at issue constitute a trade secret." *Centennial Bank*, 717 F. Supp. 3d at 561 (quoting *GlobeRanger Corp.*, 836 F.3d at 492–93).

Plaintiffs have identified parts of the Amplify EyeCare Platform with sufficient specificity such as the "ampUP" "proprietary software."[3] *See ResMan, LLC v. Karya Prop. Mgmt., LLC*, No. 4:19-CV-00402, 2021 WL 3403935, at *4 (E.D. Tex. Aug. 4, 2021); *see also Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 875 (5th Cir. 2013) (recognizing that "software[ ]and, in particular, the underlying proprietary source code" can constitute a trade secret). Plaintiffs also identify "proprietary acquisition criteria" as trade secrets.[4] That is sufficient at this stage. *See, e.g.*, *Spear Mktg., Inc. v. BancorpSouth Bank*, No. 12-cv-3583, 2013 WL 3297593, at *6 (N.D. Tex. July 1, 2013) (plaintiff sufficiently pleaded its trade secret by (1) describing categories like

[3] Compl. ¶¶ 34, 44, ECF No. 1.
[4] *Id.* at ¶ 45.

"*Technical Data and Information*" and "*Business Information*," and (2) qualifying each with the terms "including but not limited to[]") (italics in the original).

However, Plaintiffs fail to adequately plead that RF/Kian knew that the information received was secret. A prerequisite to misappropriation is that the defendant knew or had reason to know that the information at issue was a trade secret or had been acquired through improper means. *Pie Dev., L.L.C. v. Pie Carrier Holdings, Inc.*, 128 F.4th 657, 664 (5th Cir. 2025) (affirming dismissal of trade secret misappropriation claim when complaint "contain[ed] no facts to plausibly support a claim that [defendants] knew or had reason to know that the alleged trade secret was, in fact, a trade secret, or that anyone had improperly acquired it").

Plaintiffs argue that RF and Kian were aware that the trade secrets belonged to AEC/Amplify because RF signed a nondisclosure agreement ("RF NDA"), the Offering Memorandum identified the Amplify EyeCare Platform, and RF/Kian sought due diligence from Amplify.[5] But the RF NDA does not identify any specific information as secret, it simply defines "Confidential Information" in relevant part as "any non-public, confidential, or proprietary data or information . . . related to the Company[.]"[6] Such language, without more, is insufficient to infer that RF/Kian knew what information was or was not secret.

Likewise with the Offering Memorandum. Plaintiffs summarize their allegations as to knowledge this way: "both RF and Kian received the Offering Memorandum from SPP that expressly identified Lakewood as the 'Sponsor' of the opportunity but the Individual Plaintiffs and Amplify EyeCare Platform by name."[7] But the Offering Memorandum states that any information contained within it belonged to the "Company" (i.e. NewCo, now VisionMed) not AEC/Amplify.

[5] Resp. RF/Kian's Mot. Dismiss 5–6, ECF No. 56.
[6] See RF/Kian's Appx Supp. Mot. Dismiss APP000001–3, ECF 31-1.
[7] Resp. RF/Kian's Mot. Dismiss 6, ECF No. 56.

Indeed, RF/Kian were presented with an Offering Memorandum that identified Amplify as one of fourteen optometry practices NewCo might acquire—not the owners of any trade secrets. These facts are insufficient to show that the Offering Memorandum put RF/Kian on notice that they had been afforded access to AEC/Amplify's trade secrets.

Finally, the fact that Kian and RF sought due diligence from Amplify does not adequately allege knowledge. Nowhere in the Complaint do Plaintiffs' allege that RF or Kian were told that specific information was secret. The reasoning of the court in *Canoo Techs., Inc. v. Harbinger Motors, Inc.* is persuasive: allegations that investors acquired the plaintiff's information during due diligence and "should have known" it was proprietary do not suffice to state a claim. No. 2:22-CV-09309-FLA (JCX), 2024 WL 4329059, at *4 (C.D. Cal. Feb. 1, 2024). Because failure to plead one element of trade secret misappropriation is dispositive, the Court need not reach the final element. Accordingly, Plaintiffs' DTSA and TUTSA claims against Kian and RF are **DISMISSED**.

2. <u>Breach of Contract</u>

RF argues that Amplify's breach of contract claim should be dismissed because relevant provisions of the RF NDA expired and Amplify has not properly alleged breach.[8] Under applicable New York law,[9] "[t]o successfully bring a breach of contract claim, a plaintiff must establish: '(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach.'" *Aptargroup, Inc. v. ARS Pharms., Inc.*, No. 25-cv-2545, 2026 WL 866954, at *3 (S.D.N.Y. Mar. 30, 2026) (quoting *Diesel Props S.r.l. v. Greystone*

---

[8] RF/Kian's Br. Supp. Mot. Dismiss 14–16, ECF No. 30.

[9] The RF NDA specifies that New York law govern and the Parties do not dispute the applicability of that provision. *See, e.g., id.* at 3.

*Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)). A plaintiff must identify the provisions of the contract that were breached as a result of the alleged acts at issue. *Piuggi v. Good for You Productions LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024) (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Serv., Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011)). "[S]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Id.* (quoting *Berman v. Sugo L.L.C.*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

The only element that RF contests is breach. The Complaint alleges that RF breached the non-disclosure agreement by "(1) disclosing the Confidential Information to third parties, including, without limitation, Kian; (2) using the Confidential Information in the creation of US VisionMed and its platform; and (3) failing to destroy and/or return any Confidential Information upon the conclusion of the relationship with Amplify and/or the expiration of the RF NDA."[10]

The Court finds that Amplify has adequately alleged breach of contract. Even if RF did not know it had been afforded access to Amplify's confidential information, knowledge is not an element of the breach of contract. *See Piuggi*, F. Supp. 3d at 167. The terms of the RF NDA restricted the use of the Confidential Information solely to consideration of potential formation of the NewCo.[11] The Complaint sufficiently pleads that RF used Amplify's Confidential Information in the formation of VisionMed because "at least six of the practices from the Amplify Platform were acquired by VisionMed and, upon information and belief, the remaining targets have been contacted and/or solicited."[12] Accordingly, RF/Kian's Motion to Dismiss is denied as to the breach of contract claim.

---

[10] Compl. ¶ 227, ECF No. 1.
[11] *Id.* at ¶¶ 74, 84.
[12] *Id.* at ¶¶ 185–88; *see also Id.* at ¶¶ 190–91 (alleging that RF and Kian are even officers and directors of VisionMed).

3. Tortious Interference

Next, RF/Kian challenge the sufficiency of Amplify's tortious interference claim. To state a claim for tortious interference with prospective business relationships, a plaintiff must allege (1) a reasonable probability that the plaintiff would have entered into a business relationship with a third party, (2) the defendant either acted consciously to prevent the relationship or knew that its conduct would cause interference with the relationship, (3) the defendant's conduct was independently tortious or unlawful, (4) the interference proximately caused the plaintiff's injury, and (5) the plaintiff suffered actual damage as a result. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 750 (5th Cir. 2019).

Amplify clarifies in its response that its interference claim against RF/Kian rests solely on Amplify having been led to believe it would be involved in NewCo and on "RF/Kian proceed[ing] without Amplify."[13] Amplify's claim fails at the outset. It is black letter law that a party cannot tortiously interfere with its own contract. *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 372 (Tex. App. 2022—El Paso 2022, no pet.). Taking the allegations in the Complaint as true, it is indisputable that RF/Kian were parties to the NewCo venture and thus cannot have interfered with it.[14] *Id.* Accordingly, Amplify's tortious interference claim against RF/Kian is **DISMISSED**.

4. Unfair Competition and Civil Conspiracy Claims

Plaintiffs bring claims for unfair competition and civil conspiracy against RF/Kian. Both causes of action require underlying, independent, tort claims. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("Under Texas law, civil conspiracy is a derivative tort. If

---

[13] Resp. RF/Kian Mot. Dismiss 10, ECF No. 56.

[14] *See, e.g.*, Compl. at ¶¶ 91, 93, 159–63 (indicating that RF and Kian joined the joint venture/partnership), 185 (through the link referenced announcing its involvement in VisionMed, Kian describes that it "[p]artner[ed] with RF and Lakewood"), 239, ECF No. 1.

a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails."); *See Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (same with respect to unfair competition); *see also Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1042 (W.D. Tex. 2020) (granting dismissal of civil conspiracy claim pursuant to Rule 12(b)(6) when plaintiff failed to state a claim for an underlying tort).

Plaintiffs predicate their civil conspiracy claims on torts "such as fraud and tortious interference."[15]As described above, Plaintiffs have failed to state a claim for tortious interference against RF/Kian. Moreover, Plaintiffs' fraud claim is asserted only against Lakewood, not RF/Kian—and in any event, the fraud claim fails on the merits, as discussed *infra*.[16] Accordingly, Plaintiff may not assert a claim against RF/Kian for civil conspiracy. *Vaughan v. State Farm Lloyds*, Civil No. MO-15-CA-17, 2015 WL 13134509, at *3 (W.D. Tex. Aug. 5, 2015) (rejecting claim for civil conspiracy when plaintiff had failed to state a claim for any underlying tort); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (affirming 12(b)(6) dismissal and holding that a claim for civil conspiracy "rises and falls on whether" plaintiff has stated a claim on an underlying tort).

Second, unfair competition. Amplify admits that unfair competition is a derivative tort that "require[s] an underlying independent tort to be sufficiently stated."[17] *See Taylor Publ'g Co.*, 216 F.3d at 486. Thus, Plaintiffs' unfair competition claim fails for the same reasons that its civil conspiracy claim does. To the extent Plaintiffs' claims are based on Defendants' engagement in practices contrary to honest practice and predatory business practices, the allegations Amplify

---

[15] Resp. RF/Kian Mot. Dismiss 11, ECF No. 56.
[16] Compl. ¶¶ 232–37, ECF No. 1.
[17] Resp. RF/Kian Mot. Dismiss 10, ECF No. 56.

points to only involve Lakewood and are thus insufficient to support a claim against RF/Kian.[18] Accordingly, the unfair competition and civil conspiracy claims against RF/Kian are **DISMISSED**.

5. Unjust Enrichment and Quantum Meruit

Finally, the five Individual Plaintiffs each attempt to assert claims for unjust enrichment and quantum meruit against RF/Kian. "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673 (N.D. Tex. 2011) (quoting *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied)).

"The elements of a quantum meruit claim are: '(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.'" *Montes v. Benelux Corp.*, 794 F. Supp. 3d 420, 426 (W.D. Tex. 2025). "To recover in quantum meruit, the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988).

Both the unjust enrichment and quantum meruit claims fail because the Individual Plaintiffs have not pleaded facts showing that any benefit conferred on RF/Kian was the result of work independent from their work as employees of Amplify. *See Culbertson v. Harris Cnty.*, No.

---

[18] *Id.* at 11 (citing Compl. ¶¶ 128, 142, ECF No. 1 (discussing alleged acts by Lakewood before Kian or RF became involved in the deal)).

20-20527, 2023 WL 6241226, at *2 (5th Cir. Sep. 26, 2023) (plaintiff-employee could not sue defendant after defendant let its contract with the plaintiff's employer lapse because the plaintiff's resulting loss of employment was "indirect and derivative of [her employer's] injury").

The Individual Plaintiffs argue that they performed work that "was separate and distinct from Amplify and in furtherance of the proposed roll-up or acquisition, thereby placing such work outside the scope of any employment agreements between Amplify and the Individual Plaintiffs."[19] But this argument is contradicted by their own allegations which state that Defendants received the benefit of the Individual Plaintiffs' work "[a]t Amplify's expense."[20] If Amplify is the party that incurred the expense, it follows that the work performed by the Individual Plaintiffs was on behalf of Amplify. Accordingly, even if RF/Kian benefited from the Individual Plaintiffs' work, because the Individual Plaintiffs are employees of Amplify they cannot maintain a claim in unjust enrichment or quantum meruit against third parties such as RF/Kian. *See* Restatement (2d) Agency, § 372(2); *see also Garzes v. Lopez*, 281 F. App'x 323, 325 (5th Cir. 2008) ("[C]orporate shareholders, officers, and employees may not pursue personal claims that are based on alleged misconduct towards the corporation unless they are able to show some 'direct' harm to themselves."). Accordingly, Individual Plaintiffs' claims against RF/Kian for unjust enrichment and quantum meruit are **DISMISSED**.

### B. Lakewood's Motion to Dismiss

1. <u>Trade Secret Misappropriation</u>

---

[19] Resp. RF/Kian Mot. Dismiss 14, ECF No. 56; *but see* Compl. ¶¶ 127 ("Mr. Crosby thereafter continued to seek more Confidential Information and work from *Amplify*.") (emphasis added), 136 ("[B]oth Dr. McBryar and Ms. Brooks had been working tirelessly with *Lakewood* as well to consummate a transaction.") (emphasis added), 276–80, ECF No. 1 ("At *Amplify's* expense, Lakewood, Kian, RF, and US VisionMed received the benefit of the Individual Plaintiffs' work.") (emphasis added)).

[20] Compl. ¶ 276, ECF No. 1.

Plaintiffs have adequately pleaded a trade secret misappropriation claim against Lakewood under both DTSA and TUTSA. Lakewood argues that AEC's misappropriation claim fails because (1) Lakewood never entered an NDA that established a confidential relationship with Plaintiffs; (2) AEC voluntarily disclosed so-called trade secrets and confidential information to Lakewood; and (3) AEC fails to identify any alleged trade secret or use of said trade secret with particularity.[21]

First, AEC does not adequately allege that Lakewood stepped into Tandem's shoes such that Lakewood would be subject to the Tandem NDA. *See infra* III.B.2. However, Plaintiffs do sufficiently allege a confidential relationship, even in the absence of an express agreement.

An executed non-disclosure agreement is not necessary for a confidential relationship to exist. *See, e.g.*, *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) ("When a claim of improper disclosure or use of trade secrets arises from a confidential relationship, the injured party is not required to rely upon an express agreement that the offending party will hold the trade secret in confidence.") (citation omitted).

TUTSA defines misappropriation to include disclosure after receiving a trade secret under "circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret . . . ." TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii)(b). "An express agreement [is] not necessary where the actions of the parties, the nature of their arrangement, the 'whole picture' of their relationship established the existence of a confidential relationship." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 584 (5th Cir. 2013) (citations omitted). Therefore, "a confidential relationship may exist [when the disclosing party reveals a trade secret to allow the recipient of the information] to assess a proposed business arrangement or transaction

[21] Lakewood Br. Supp. Mot. Dismiss 6–11, ECF No. 50.

when the party receiving the information (1) expressly promised to keep it in confidence; or (2) received the information under circumstances that would justify the conclusion that the party knew or had reason to know that the disclosure was intended to be in confidence, and the disclosing party reasonably inferred that the [recipient has] consented to keep the information confidential." *Eagle Oil & Gas Co. v. Shale Expl.*, LLC, 549 S.W.3d 256, 272 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

The Complaint alleges that when initially marketing the proposed optometry roll-up, AEC provided "only limited, general information regarding Amplify and the opportunity."[22] Further information was provided only after the execution of a non-disclosure agreement, such as the one executed by Tandem.[23] Tandem then involved Lakewood.[24] AEC alleges that its disclosure of Confidential Information to Lakewood was for the purposes of consummating the formation of NewCo and was induced by false promises and pleas of necessity.[25] Construing the allegations in the Complaint in the light most favorable to the plaintiff, AEC has alleged the existence of a confidential relationship between itself and Lakewood. *See Hyde Corp. v. Huffines*, 314 S.W.2d 763, 769–70 (Tex. 1958) (explaining that a confidential relationship may exist in contexts such as when information is disclosed to a prospective purchaser).

Second, AEC has adequately alleged that Lakewood acquired the trade secrets through improper means. Under both the DTSA and TUTSA, "improper means" is defined as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" 18 U.S.C.A. § 1839(6); see also Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(2); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th

---

[22] Compl. ¶ 63, ECF No. 1.
[23] *See id.* at ¶¶ 59, 70.
[24] *Id.* at ¶¶ 85–86.
[25] *Id.* at ¶¶ 74, 91–100, 110.

Cir. 2013) (defining "improper means" to include "other means either wrongful in themselves or wrongful under the circumstances of the case").

Despite Lakewood's contention that AEC/Amplify voluntarily disclosed confidential information, Plaintiffs' allegations as outlined in the preceding paragraphs show that AEC/Amplify intended information relating to its propriety acquisition criteria and other confidential information to remain secret. Lakewood's characterization of the allegations as "misappropriation *in hindsight*" is unavailing.[26] Plaintiffs allege that Lakewood represented that it would not misuse the Confidential Information[27] and then did.[28] That is enough. *See Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, No. H-15-2641, 2016 WL 5844707, at *10 (S.D. Tex. Oct. 6, 2016) (explaining that a "breach of a duty to maintain secrecy is sufficient to show trade secret misappropriation"). Furthermore, AEC/Amplify's allegations that Lakewood violated its confidentiality obligations require an inquiry that is better addressed on a fuller evidentiary record. *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, No. 14-CA-877, 2014 WL 7237411, at *12 (W.D. Tex. Dec. 17, 2014) ("[W]hether the information at issue actually constitutes trade secrets, whether [plaintiff] adequately protected those alleged trade secrets, whether [defendant] acquired any alleged trade secrets improperly, and whether [defendant] has disclosed or will disclose the alleged trade secrets are fact questions to be resolved on a full evidentiary record[]").

Finally, for the reasons discussed *supra*, AEC has adequately identified trade secrets. *See* III.A.1. Accordingly, Plaintiffs have sufficiently pleaded the elements of trade secrets misappropriation and Lakewood's motion to dismiss is denied as to this count.

2. Breach of Contract

[26] Lakewood's Reply 3, ECF No. 59.
[27] Compl. ¶¶ 94–96, ECF No. 1.
[28] *Id.* at ¶ 175–77.

Amplify's breach of contract claim against Lakewood fails to state a claim upon which relief could be granted. Amplify argues that the "Complaint includes three different theories and supporting factual bases for Lakewood being contractually bound by the Tandem NDA: (i) it falls within the definition of 'Representative' in the NDA; (ii) it assumed the obligations thereunder and Tandem's role as the successor-in-interest; and (iii) it is equitably estopped from disclaiming the NDA."[29] The Court disagrees.

First, Lakewood was not a signatory to the Tandem NDA.[30] The Tandem NDA defines "Representatives" to include directors, officers, employees, professional advisors, controlling persons, and lenders of Tandem.[31] Even if, as Amplify alleges, Lakewood falls under the definition of "Representatives" of Tandem, it would not create a separate cause of action against Lakewood for breach of contract. A non-signatory to a nondisclosure agreement cannot be held liable for an alleged breach of that agreement because "a party generally must be a party to a contract before it can be held liable for a breach of the contract." *See Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 574–75 (S.D. Tex. 2020) (quoting *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) and dismissing breach of NDA claim against non-signatory defendants). Lakewood is a separate LLC, so Amplify's recourse under this theory would be against Tandem, not Lakewood.

Second, Amplify makes only conclusory allegations that Lakewood assumed the obligations of the Tandem NDA. Assumption can be implied and is found either: "(1) when the term was so clearly within the contemplation of the parties that they deemed it unnecessary to express it or (2) on equitable grounds." *NextEra Retail of Texas, LP v. Invs. Warranty of Am., Inc.*, 418 S.W.3d 222, 227–28 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Equitable grounds

[29] Pls'. Resp. Lakewood's Mot. Dismiss 11, ECF No. 55.
[30] Compl. ¶ 70. ECF No. 1.
[31] *Id.* at ¶ 71.

"arise 'when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched.'" *Id.*

But as Amplify's own authority states "[i]mplied covenants are not favored." *Id.* at 227 (citing *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). Moreover, any equitable basis for holding Lakewood accountable under the Tandem NDA is assuaged by the Court's ruling *supra* as to the existence of a confidential relationship between Lakewood and AEC.

Third, Amplify advances an equitable estoppel theory, arguing that Lakewood obtained the benefits of the Tandem NDA and thus should be bound to its terms.[32] But Amplify does not sufficiently allege that it only provided Lakewood its Confidential Information because of the Tandem NDA. The allegations that Amplify, AEC, and the Amplify Founders took steps to ensure secrecy and the protection of their information are insufficient to make Lakewood a party to an agreement it never signed. *See MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) ("A court will not create a third-party beneficiary contract by implication . . . a presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract."). Accordingly, Amplify's breach of contract claim against Lakewood is **DISMISSED**.

3. <u>Common Law Fraud Claims</u>

Lakewood next challenges Plaintiffs' common law fraud claims. Plaintiffs do not overcome Federal Rule of Civil Procedure 9(b)'s particularity requirement and thus fail to state claims for fraud. The elements of Texas common law fraud are (1) that a material representation

---

[32] Pls'. Resp. Lakewood's Mot. Dismiss 13, ECF No. 55.

was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 391 (5th Cir. 2018); *Wu v. Tang*, No. 3:10-CV-0218-O, 2011 WL 145259, at *9 (N.D. Tex. Jan. 14, 2011). In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

The Court agrees with Lakewood that many of the allegedly fraudulent statements were forward looking and Plaintiffs do not point to any allegations indicating that they were false when made. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (Pleading fraud requires that "a material representation was made…that it was false . . . [and] that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth…."). This is fatal to Plaintiffs' claims.

Plaintiffs point to a litany of allegedly false statements made by Lakewood concerning Individual Plaintiffs' future employment, Amplify's involvement in any future transaction, and the handling of Confidential Information.[33] But Plaintiffs do not state any factual basis to infer that these representation—though they ultimately did not come to pass—were known to be false or that Lakewood never intended to actually perform. The Complaint asserts only "upon information and belief" that Lakewood never intended to consummate the transaction. Such general, conclusory allegations do not overcome "who, what, when, [where, and how]" of Rule 9(b). *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177, 179 (5th Cir. 1997). Specifically, Plaintiffs fail to show *how*

[33] Pls'. Resp. Lakewood's Mot. Dismiss 15–16, ECF No. 55 (citing Compl. ¶¶ 106, 112, 121, 124, 126, 131, 135, 140, 146, 152-53, 158, 161, 164, ECF No. 1).

the promises were fraudulent other than by the fact that they never came to pass. Accordingly, Plaintiffs' fraud claims against Lakewood are **DISMISSED**.

4. Plaintiffs' Remaining Claims

Lakewood also challenges the sufficiency of Plaintiffs' allegations with respect to their tortious interference claim. A plaintiff bringing a claim of tortious interference with prospective business relationships must allege that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir. 2023); *Spano v. EAN Holdings, LLC*, No. 4:25-CV-00617-O, 2026 WL 508365, at *3 (N.D. Tex. Feb. 24, 2026).

Lakewood argues that Plaintiffs failed to plead their tortious interference claims because their claims are based on non-binding LOIs entered into with eight targeted optometry practices, and because Plaintiffs voluntarily reworked those LOIs so that Lakewood and Amplify could move forward with sufficient funding.[34] Plaintiffs respond that (1) Amplify had a reasonable probability of entering into business transactions with the optometry practices at issue because "the relationship was so developed that funding was the only thing causing the delay in consummation;"[35] (2) Plaintiffs conclude that Lakewood had a conscious desire to prevent the relationship from occurring; and (3) any of Lakewood's other arguments should be disregarded as merits arguments.

---

[34] Lakewood Br. Supp. Mot. Dismiss 15–16, ECF No. 50.
[35] Pls'. Resp. Lakewood's Mot. Dismiss 18, ECF No. 55.

Plaintiffs fail to meet the first element of a tortious interference claim because the entire Complaint is premised on Plaintiffs' inability to secure funding for its business plan, hence the need for Lakewood's involvement. Plaintiffs cannot then turn around with generalized speculation that other funding could have been acquired such that they were likely to enter business transactions with the relevant optometry practices.[36] Accordingly, Plaintiffs' claim for tortious interference against Lakewood is **DISMISSED** because they have not adequately alleged that there was a reasonable probability that they would have entered into a business relationship with a third party.

Plaintiffs' unfair competition and civil conspiracy claims against Lakewood fail for the same reasons they fail as to RF/Kian. Likewise with the Individual Defendants' claims for unjust enrichment and quantum meruit. Thus, these claims are also **DISMISSED** as to Lakewood.

### C. VisionMed's Motion to Dismiss

#### 1. Trade Secret Misappropriation

AEC has plausibly alleged trade secret misappropriation against VisionMed. For the reasons given *supra*, AEC has identified trade secrets with sufficient particularity. Texas recognizes "six discrete forms" of trade secret misappropriation, including "use of a trade secret of another . . . derived from or through a person who had utilized improper means to acquire it." *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 343 (E.D. Tex. 2019). As the Court has already found, Plaintiffs have plausibly alleged that Lakewood misappropriated AEC/Amplify's trade secrets.

Plaintiff has further alleged that members of Lakewood formed VisionMed and brought with them knowledge of Plaintiffs' trade secrets, which they knew should only be used to evaluate

[36] *Compare* Pls'. Resp. Lakewood's Mot. Dismiss 18, ECF No. 55 *with* Compl. ¶¶ 99, 110, ECF No. 1.

investment in Amplify.[37] It is reasonable to infer then that VisionMed acquired AEC/Amplify's trade secrets from its founders and board and that these trade secrets should only have been used to evaluate investment in Amplify. *Twombly*, 550 U.S. at 556. Finally, the Complaint adequately alleges that VisionMed improperly used Confidential Information. The Court has already found that VisionMed's acquisition of the six targets identified by Amplify is sufficient to plead improper use. Accordingly, Plaintiffs have plausibly alleged trade secret misappropriation and VisionMed's motion to dismiss is denied as to that claim.

2. Unfair Competition, Unjust Enrichment, and Quantum Meruit

Plaintiffs' unfair competition and unjust enrichment claims fail because they are preempted by TUTSA. Plaintiffs argue their claims avoid TUTSA preemption because they may involve confidential information not ultimately deemed a trade secret.[38] But, as many courts have found, TUTSA preempts state tort claims premised on the same facts as a misappropriation claim. TEX. CIV. PRAC. & REM. CODE § 134A.007; *DeWolff, Boberg & Assocs., Inc. v. Clark*, No. 3:22-CV-2489-K, 2023 WL 5437665, at *5 (N.D. Tex. Aug. 23, 2023) (citing *Comput. Scis. Corp. v. Tata Consultancy Servs. Ltd.*, Civ. Action No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *7 (N.D. Tex. Feb. 7, 2020) (collecting cases and holding, "Plaintiff's state law claims for unfair competition, conspiracy, tortious interference with a prospective economic advantage, and conversion are preempted by TUTSA and should be dismissed."), *report and recommendation adopted*, No. 3:19-CV-00970-X, 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020).

Because unfair competition and unjust enrichment are predicated on an independent tort claim and Plaintiffs' only potential independent cause of action against VisionMed is preempted by TUTSA, Plaintiffs fail to plead a claim up which relief can be granted.

---

[37] *See, e.g.*, Compl. ¶¶ 71, 185, 189, 190, ECF No. 1.

[38] Pls.' Resp. VisionMed's Br. Supp. Mot. Dismiss 6–7, ECF No. 54.

Plaintiffs' quantum meruit claim against VisionsMed fails for the same reasons that it fails against RF/Kian. *See* III.A.5. Accordingly, Plaintiffs' claims for unfair competition, unjust enrichment, and quantum meruit against VisionMed are **DISMISSED**.

## IV. CONCLUSION

For the forgoing reasons RF/Kian, Lakewood, and VisionMed's motions to dismiss (ECF Nos. 29, 37, 49) are **GRANTED** in part and **DENIED** in part. RF/Kian's motion to dismiss is **DENIED** as to Plaintiffs' breach of contract claim and **GRANTED** as to all other claims against RF/Kian. Lakewood's motion to dismiss is **DENIED** as to Plaintiffs' trade secret misappropriation claim and **GRANTED** as to all other claims against Lakewood. VisionsMed's motion to dismiss is **DENIED** as to Plaintiffs' trade secret misappropriation claim and **GRANTED** as to all other claims against VisionMed.

**SO ORDERED** on this **8th day** of **October, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**